Hall agt. Nelson.

## SUPREME COURT.

VALENTINE HALL, respondent agt. RUEA NELSON, appellant.

The owner of the equity of redemption is undoubtedly a necessary party to a
suit for the foreclosure of a mortgage. And the objection of the want of such
party can be taken by the *mortgagor* who has parted with his equity of re-
demption; because he is essentially interested under his ultimate liability for
the debt, to have the title made by the sale, perfect against all equities, and
especially against the entire equity of redemption

And further; the owner of the equity of redemption by a deed *unrecorded* at the
commencement of the suit, and at the filing of the notice of *lis pendens*, is
a necessary party.

The filing of notice of *lis pendens* is merely a statute substitute for actual notice
to *subsequent* purchasers and incumbrancers of the existence of the plaintiff's
claim. This proceeding by the statute is prospective entirely

There is nothing in the act, or elsewhere, declaring unrecorded conveyances void
against, or in respect to suits commenced, or notices of the pendency of actions
filed subsequent to such deeds, or subjecting the owners of lands whose titles
are not upon record to the consequences of a suit for foreclosure to which
their grantors might be parties, and they were not. An unrecorded deed is not
declared void as to a foreclosure of a mortgage commenced after its delivery,
but only as to subsequent purchasers of the property in good faith. It is only
between parties holding deeds or mortgages of the premises that such questions
under the registry act can arise.

So much of the Code of Procedure as confers jurisdiction of the *foreclosure of
mortgages* upon COUNTY COURTS is *unconstitutional and void.*

*Dutchess General Term, April,* 1856.

BROWN, S. B. STRONG *and* EMOTT, *Justices.*

APPEAL from a judgment of foreclosure of mortgage premises.

By the Court—EMOTT, Justice. There is no doubt that the
owner of the equity of redemption is a necessary party to a suit
for the foreclosure of a mortgage. The mere statement of this
proposition is sufficient to show its correctness without the cita-
tion of any authorities in its support. The action is brought for
the express purpose of foreclosing the equitable estate and right
to redeem remaining against the mortgage, and of transferring
to the mortgagee, or under our practice the purchaser at a sale
by virtue of the decree, a complete legal title to the mortgaged
premises.

Hall agt. Nelson.

The very object of the proceeding would therefore be completely defeated if the owner of the equity of redemption were not a party. No title could be made that would not be defeasible by the person in whom this equity of redeeming the mortgage remained not barred or destroyed. I do not understand that this proposition is disputed as a general rule by the counsel for the respondent, but it is sought to be met in its application to this case, by the answer first, that the mortgagor, after he has parted himself with the equitable estate, cannot make the objection that his grantee is not a party to the suit; and secondly, that the deed from the mortgagor to the present owner of the equity of redemption, was not recorded at the time of the commencement of this suit, and of the filing of the notice of *lis pendens*, makes an exception to the general rule.

The first reason is manifestly insufficient. The want of any necessary party, of any party without whom the matters in litigation cannot be fully determined, or a perfect judgment be rendered, is an objection which is expressly given to any party by the Code by demurrer, when the facts constituting the objection appear in the complaint, or by answer when they do not. And this objection comes with entire propriety from the mortgagor in a foreclosure suit, because his ultimate liability for the debt makes it of the highest importance to him that the title which will be made by the sale should be perfect against all equities, and especially against that which is of the greatest consequence, the entire equity of redemption.

There is no question, therefore, left as to this point, but the main question, whether the owner of the equity of redemption, by a deed unregistered at the commencement of the suit, and at the filing of the notice of *lis pendens*, is a necessary party. The fact of the conveyance by the defendant, Ruea Nelson, to one George W. Nelson, previous to the commencement of this action, was proved on the trial, and that his deed had been subsequently recorded. No possession was shown to have been taken of the lands by the grantee in this deed, and thus the question turns upon the effect of the commencement of this foreclosure and the filing of the *lis pendens* upon the owner of

the equity of redemption by an unrecorded deed, and the effect of the subsequent recording of the deed upon the title of a purchaser, at a sale by virtue of a judgment in this action.

The effect of filing of a notice of the pendency of a suit of any description, affecting lands, is sufficiently plain from the Code, (§ 132.) It is declared to be constructive notice of the action, from the time of its filing, to purchasers and incumbrancers. The same was its office under the former practice. (2 *R. S.* 174, § 43.)

The words purchasers and incumbrancers, in these statutes, evidently mean purchasers subsequent to the notice. The operation of the proceeding is prospective entirely. There is nothing in the act or elsewhere declaring unrecorded conveyances void against, or in respect to suits commenced, or notices of the pendency of actions filed subsequent to such deeds, or subjecting the owners of lands, whose titles are not upon record, to the consequences of a suit, to which their grantors might be parties and they were not, merely from the plaintiff giving notice in the manner required by statute, that he had commenced such a suit: and there is nothing in the effect or operation of such a notice which assimilates it to a conveyance, or brings it within the definition of that term given by the recording act. The filing of this notice is merely a statute substitute for actual notice to subsequent purchasers and incumbrancers, of the existence of the plaintiff's claim, and that he had commenced an action to enforce it upon the lands. Whoever buys after that, buys with notice equivalent to actual knowledge of these facts.

Nor does the registry act afford any better answer to this objection. Its whole object, as well stated by Chancellor WALWORTH, in *Stuyvesant* agt. *Hall,* (2 *Barb. Chan. R.* 158,) is to protect subsequent grantees and mortgagees against previous mortgages, deeds, &c., which are not recorded, and to deprive the holder of a prior unregistered conveyance of the right which his priority in time would have given him at the common law.

The recording of a deed or mortgage, therefore, is constructive notice only to those who have subsequently acquired some

Hall agt. Nelson.

right or interest in the property under the mortgagee or grantor. And in this case of *Stuyvesant* agt. *Hall*, the chancellor held, that the recording of a subsequent mortgage by the mortgagee, of a part of the premises included in a prior mortgage, and the filing of a notice of the commencement of a suit to foreclose this junior incumbrance, were not constructive notice to the holder of the prior mortgage so as to establish any rights or equities against him.

It is not the intention of the recording acts, or the effect of recording any conveyance under their provisions, to create or destroy any rights with respect to prior recorded deeds or mortgages. An unregistered deed is not declared void as to a foreclosure of a mortgage commenced after its delivery, but only as to subsequent purchasers of the property in good faith. It is only between parties holding deeds or mortgages of the premises, that such questions under the registry act can arise.

As soon as these premises should have been sold, and a conveyance made to a purchaser, that purchaser could claim the protection of the statute against any deed not then recorded, and of which he had no notice. But if he should find, as he would in this case, a deed of the equity of redemption on record, made before this suit was brought, and the grantee in which was not a party here, he would find an equity of redemption which this judgment did not foreclose, and a deed which his subsequent conveyance did not affect, or in any way override.

It is perfectly clear, that the objection raised by this answer, and proved on the trial in the court below, was sufficient to prevent any further proceedings in the action until this difficulty was obviated.

If there were no further question in the case, the judgment should be reversed, and the proceedings remitted to the county court for a new trial. But another question is raised here, and in other cases argued at this term, and that is the constitutionality of the act conferring jurisdiction of the foreclosure of mortgages in county courts.

If this were a new question, I should have no difficulty in holding that the words "special cases," in § 16 of the article

of the constitution relating to the judiciary, must mean cases which the legislature should specify. The extent of the selection and specification thus to be made might very properly be left to the legislature; and the county court, according to such an exposition of the constitution, might be moulded into such a form as the public exigencies should require. Undoubtedly the legislature, in the passage of the judiciary act and of the Code of Procedure, acted upon such a construction of the constitution—a construction which would vest a large discretion in them, in giving jurisdiction to this tribunal.

The community have acquiesced in this construction, and under these statutes litigations and judgments have taken place, and titles have been acquired by the intervention of the county courts, and they were filling a large and increasing sphere of usefulness in our judicial system.

These are considerations which courts ought not lightly to disregard in passing upon the construction of a constitutional provision, so obscure and so doubtful in its meaning as that under consideration. Such a provision should be construed and expounded, I think, if possible, in accordance with the deliberate sense and action of the legislature, and in such manner as to promote the public interests, and the great and obvious ends of the instrument, and the article of which it is a part.

I make these observations because I foresee the serious consequences of holding this statute to be unconstitutional, and I feel the force of the argument they suggest in so doubtful a case. But these are considerations to which our ears can no longer be open; and for the consequences of a decision adverse to the jurisdiction of the county courts in these cases this court will be in no degree responsible. The question is no longer an open one for us. In the case of *Kundolf* agt. *Thalheimer*, (2 *Kern.* 593,) the court of appeals have settled the construction of the constitutional provision by which the jurisdiction of the county courts is defined and adjudicated—the principles by which that article must be expounded. We are not, therefore, to construe this part of the constitution as we understand it,

Hall agt. Nelson.

but as it is understood and expounded by the court of last resort.

There were two methods of interpreting the words "special cases," which is the limiting phrase twice used in the constitution in reference to the jurisdiction which may be conferred on the county courts, limiting their "original civil jurisdiction," and their "jurisdiction in equity cases." One method is that which I have indicated above, and which would consider the word "special," as used with reference to the future action of the legislature, perhaps as rather directory than otherwise, making it necessary for the legislature to select and specify particular, if not peculiar, cases, which this court might entertain, but allowing every action to be or become a special case within this jurisdiction which the legislature saw fit to legislate into that category.

The other construction would refer the meaning of the word "special" altogether to the past action of the same legislative department of the government, and restrict it, not to what the legislature might thereafter see fit to make, but to what they had already made special cases. In other words, according to this view, the special cases which the county court might entertain, were such as were then known in the legislation of the state as distinct from the ordinary suits and actions, possessing characteristics by legislation which were extraordinary and peculiar, and authorized by law to serve a particular purpose. This latter view is that which is taken by the court of appeals, and there is no authority under the constitution, as they have interpreted it, to confer jurisdiction upon the county court, except in those particular cases which were to be found in the statute book when the constitution was adopted, possessing all these characteristics, and thus clearly distinguishable from all ordinary suits and actions.* For examples of such cases, the

* In the leading opinion referred to in *Kernan*, GARDINER, Judge, says, "I think that the people have said to the legislature, by their ratification of this article, [of the constitution,] you shall have authority to confer unlimited original civil jurisdiction upon the county courts, in special cases now existing, OR *which may hereafter arise*, in the fair exercise of your general power of legis-

Hall agt. Nelson.

court refer to summary proceedings to recover land, proceedings to drain swamps, and proceedings in insolvency; examples which indicate clearly the scope which the court intended should be given to the provisions in question. It is true, the decision reported in 2d *Kernan* was made in reference to one of a class of actions that were formerly known as actions at law, but the jurisdiction of the courts was as well established and their proceedings as well settled in suits in equity, as in the ordinary common law actions of assumpsit case, covenant and the rest. And therefore it is as easy to determine what were special proceedings in equity as at law, according to the statutes, and the jurisdiction and practice of the courts in 1846.

We were pressed, at the hearing, with the argument, that the term " special cases " was recognized and applied as the description of all causes or actions, as well as proceedings, which had been subjected to special regulations or enactments, as to the mode of procedure: that is, that whenever the legislature had, previous to 1846, taken a common law action, or any kind of suit in equity belonging to the ordinary jurisdiction of the courts, and had made special regulations as to the mode of proceeding, or the manner of enforcing the remedy in any such case, this made any kind of action or proceeding which had thus been legislated upon a special case.

I do not know that there is any legislation to be found upon the statute books that would bring suits for the foreclosure of mortgages within even this test. Mortgages, their redemption

lation. All other ' *cases* ' now recognized by law are *excepted* from this grant of power; and as to them you are prohibited from vesting that court with any such jurisdiction, either general or special and limited."

It would seem by this language that the court did not intend to construe the constitution as limiting the authority of the legislature, in conferring jurisdiction upon county courts, to the *special cases then existing* under the statute, but to include such also as might thereafter arise. This, however, does not appear to touch the principal question in this case; whether an action for the foreclosure of a mortgage is not as well defined in equity in this country, as an action of assault and battery at common law—and both come within the *exception* as to " *cases* " mentioned in the opinion of Judge GARDINER.—[REPORTER.]

and their foreclosure, are among the earliest and best known subjects of equity jurisdiction, wherever such a jurisdiction is recognized. The maxims by which this branch of equity law is administered, and even the procedures and the remedies which the law affords in such cases, are in a great degree borrowed from the civil law. From thence we derive the method of terminating the mortgagor's right of redemption by a sale which, although rejected by the equity courts of our mother country for a strict foreclosure, has always been the practice of our tribunals.

There is little or nothing in the statutes in reference to mortgage cases, which is not declaratory of principles of equity and rules of practice which had been previously adopted by the courts as part of the equity jurisprudence of the state.

But this cannot be the true test of the class of cases we are seeking. Cases that were special at this period were such actions and proceedings as were either wholly the creature of statute for special and recognized purposes, and not in their nature within the ordinary jurisdiction of the courts, or they are remedies given by statute, which are entirely new and unlike the ordinary and usual course of proceeding of the courts in every other case.

The doctrine of the case of *Kundolf* agt. *Thalheimer* is, that we are to construe the phraseology of the constitution by the state of facts existing when it was adopted; that we are to see what actions and proceedings would have been known and described as special cases under the statutes in 1846. It will hardly do to say that the term would then have been admitted to be applicable to all cases and actions in regard to which the legislature had made any special provisions, or to all the matters which are regulated by the provisions of the 8th chapter of the 3d part, or in other portions of the Revised Statutes. For instance, the legislature, in 1830, saw fit to change entirely the character and the procedure in the action of ejectment, to abolish the common law fictions of lease, entry and ouster, and to substitute a statutory action of ejectment, formerly a mere possessory action for writs of right, and all the old real actions.

Hall agt. Nelson.

Did that make the action of ejectment a special case according to the construction we are following? Clearly not; because the proceedings in the action of ejectment were still left to follow the course of the common law and the existing practice of the court in all its essential features. There was still a declaration and a plea, a trial, verdict, judgment and execution, as in other actions. The action could still be brought in all cases where it lay under the old practice, and in certain additional cases, in lieu of a writ of right, and a writ of dower.

The action still continued a common law action, and its course was that of ordinary suits at law in all its main and essential characteristics. So, too, the action of replevin was, by the same statutes, extended in its scope and altered in its procedure; but hardly any lawyer, I think, would, in 1830 or in 1846, have called the action of replevin a special proceeding, or a special case in the sense in which the court of appeals intended the use of the term.

This mode of construing the constitution, probably, leaves us but little right to inquire or to conjecture what the meaning and intention of its framers was in this or any other part of it, except as it may be gathered from the most narrow and literal construction of terms. But we may be allowed to say what it seems quite obvious that the makers of that instrument did not intend to do. And it can hardly be doubted that they did not contemplate or design any such unreasonable distinction or absurd result, as would follow from attaching the term "special cases" to all actions and proceedings in regard to which special provisions were then to be found in the statutes, and excluding all others.

It is hardly to be supposed that the authors of the constitution intended to allow the legislature to confer upon these local and limited courts jurisdiction of ejectment and replevin, of proceedings to dissolve corporations and suits against them, of actions against legatees and next of kin, and against all public bodies and on all official bonds, in short, of all the most difficult and the most complicated actions known to the common law, and which had for that reason been simplified as

Hall agt. Nelson. .

far as possible, and especially regulated by statute, and still to refuse the power to confer jurisdiction to try an action of assault and battery, or a suit on a promissory note.

It is true, there are certain remedies and proceedings given and defined by these statutes, especially in the equitable jurisdiction of the courts, which would seem to come within a very narrow definition of the term "special cases," in the view which has been taken of it by the court of last resort, and yet which are among the most complicated and difficult, though by no means the most unfrequent proceedings in our courts. Such are the proceedings against heirs and devisees for the debts of the ancestor, which are, in their present form, a new and peculiar remedy given by the statute, exclusive of any other or former modes of procedure. Such also are perhaps the proceedings in partition, by suit or petition.

These are instances of new and peculiar remedies given by the statutes, not proceeding nor resulting altogether in accordance with the ordinary rules and practice of the courts, either of common law or equity jurisdiction. Whether these, and others resembling them, are cases of which the constitution intended that the county court should be allowed to acquire jurisdiction; whether, indeed, any *action* whatever, brought in the ordinary manner of the courts, either as a legal or equitable remedy, can be tried in the county courts, are questions which must be decided as they arise. Some of them will now be found to be questions of no little difficulty. It is enough for the present case to say, that we can discover no reason or principle upon which an action for the foreclosure of a mortgage—an action as frequent in its occurrence, and as uniform and consistent with known rules in its procedure in a court of equity, as an action of assumpsit or of trespass for an assault and battery in a court of law—can be regarded as a " *special case* " under any rule, or any definition of the meaning of that term, which excludes the last mentioned forms of action at law from its scope.

We are constrained, therefore, by the authority of the court of last resort, and following their construction, to decide that

so much of the Code of Procedure as confers jurisdiction of the foreclosure of mortgages upon county courts, is unconstitutional and void, and therefore this judgment must be reversed in toto, and the complaint dismissed.

Mr. Justice BROWN concurred, that the judgment should be reversed, but upon the first ground stated in the foregoing opinion; but dissented from the opinion that the act conferring jurisdiction of foreclosures upon county courts was unconstitutional. The learned justice did not deliver any written opinion.

Mr. Justice STRONG delivered a written opinion, in which he dissented from the first ground stated above as to parties, but concurred that the act referred to was unconstitutional.

Both his opinion and also that of Mr. Justice EMOTT will be published in 23d *Barbour's Rep.*